IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**Lillian Velez Casanova,**

    Plaintiff,

        v.

**Wyndham Grand Rio Mar Beach Resort and Spa,**

    Defendant.

CIVIL NO. 13-1945 (PG)

## OPINION AND ORDER

Plaintiff Lillian Velez Casanova ("Plaintiff" or "Velez"), filed this action pursuant to the American with Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., against her employer Wyndham Grand Rio Mar Beach Resort and Spa ("Defendant" or "the Hotel"), alleging discrimination, harassment and retaliation on the basis of her disability, age, requests for reasonable accommodation, and opposition to the Hotel's unlawful employment practices. See Docket No. 1. Plaintiff also invoked supplemental jurisdiction over her state law claims under Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. Laws Ann. tit. 29, § 146 et seq.; Law No. 45 of April 18, 1935 ("Law No. 45"), P.R. Laws Ann. tit. 11, § 7 et seq.; Law No. 44 of June 2, 1985 ("Law No. 44"), P.R. Laws Ann. tit. 1, § 501 et seq., and Law No. 115 of December 20, 1991 ("Law No. 115"), P.R. Laws Ann. tit. 29, § 194 et seq.

Before the Court is Defendant's Motion for Summary Judgment (Docket No. 13), Plaintiff's Opposition (Docket No. 32), and Defendant's Reply (Docket No. 34). After a close examination of all of the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS** Defendant's Motion for Summary Judgment for the reasons explained below.

### I.   STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). "When the party who bears the burden of proof at trial is faced with a properly constituted summary judgment motion, defeating the motion depends on her ability to show that such a dispute exists." Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir.2014)(citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir.2010)).

If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505 (1986). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The court reviews the record "as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so because credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## II.   FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we address several compliance issues presented to the Court when reviewing Plaintiff's Opposition (Docket No. 32).

Local Rule 56(c) states that a non-movant's opposing statement of material facts "shall admit, deny or qualify the facts supporting the motion for summary judgment," and in so doing, shall support each denial or qualification by particularized record citations. L.Cv.R. 56(c) (D.P.R.2009). Moreover, the nonmoving party "may not include numerous additional facts within its opposition to the moving party's statements

of uncontested facts." Malave-Torres v. Cusido, 919 F.Supp.2d 198, 207 (D.P.R.2013)(internal citations omitted).

     After finding that Plaintiff's initial opposition to the Defendant's motion for summary judgment failed to comply with Fed.R.Civ.P. 56 and Local Rule 56, on May 10, 2016, this Court granted Velez a term of 15 days to refile her opposition papers. See Docket No. 30. Nonetheless, in the amended opposing statement of uncontested facts (Docket No. 32-1) Plaintiff again flaunted her complete disregard of the summary judgment standards. First, her denials and qualifications of Defendant's fact statements are either irrelevant to the matter at hand or consist of conclusory assertions and improbable inferences. See Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56-57 (1st Cir.2011)("Like Rule 56 itself, the local rule makes clear that its focus is on facts, not speculation or argumentation. Moreover, these facts must be material."). Also, many of Plaintiff's opposing statements are plagued with her subjective interpretation of the facts.

     Furthermore, most of Velez' responses to Defendant's factual averments do not comply with our anti-ferret rule. The First Circuit Court of Appeals has held "with a regularity bordering on the monotonous that parties ignore the strictures of an "anti-ferret" rule at their peril." Puerto Rico American Ins. Co. v. Rivera–Vázquez, 603 F.3d 125, 131 (1st Cir .2010); see also Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 521 (1st Cir.2015)(noting that failure to comply with the standards of Local Rule 56 by the nonmovant allows the district court to accept the moving party's facts as stated). Therefore, unless otherwise noted, the Court gleaned the material facts from Defendant's statement of uncontested facts ("SUF")(Docket No. 13-1).

     In accordance with the foregoing, the Court found the following material facts were undisputed:

### *The Parties*

1. Plaintiff was born on June 29, 1959, and is currently 57 years old. SUF at ¶ 65.

2. Defendant is a company engaged in doing business in Puerto Rico with over fifty (50) employees. Docket No. 1 at ¶ 14.

3. Plaintiff began working at the Hotel on November of 1996. Since then, Plaintiff has occupied the position of PBX Operator. Her responsibilities include answering the Hotel's incoming internal and external phone calls and following-up on the guests' requests. SUF at ¶¶ 2-4.

4. There are approximately nine (9) or ten (10) PBX Operators at the Hotel, both younger and older than Plaintiff. <u>Id.</u> at ¶ 66. During the day shift, there are usually two to three PBX Operators working at the same time. <u>Id.</u> at ¶ 6.

### *Relevant Employment Policies*

5. The Hotel maintains an express anti-discrimination policy prohibiting any type of discrimination, including age and disability discrimination and/or harassment, as well as retaliation in the workplace. There is also an internal grievance procedure for employees to bring forth claims of discrimination, harassment and/or retaliation. <u>Id.</u> at ¶ 7; Docket No. 13-5 ("Exhibit C"), at pp. 5-8.

6. The Hotel's ADA-compliance policy specifically prohibits discrimination against qualified employees or job applicants on account of physical or mental disabilities, in addition to establishing the employer's obligation to provide reasonable accommodation to qualified individuals unless the requested accommodation would cause undue hardship. Docket No. 13-5 at p. 7.

7. The Hotel also maintains a progressive discipline policy, which calls for corrective actions – such as verbal counseling and written disciplinary warnings - before more serious forms of discipline become necessary. A first disciplinary warning generally does not result in termination of employment. SUF at ¶¶ 9 and 12; Docket No. 13-5 at p. 12.

8. On the other hand, under the Hotel's attendance policy, employees who cannot arrive at work on the scheduled date and time must call the supervisor, department manager or the manager on duty to notify the absence at least two hours in advance. Absences and tardiness are considered unacceptable deviations from the work schedule. The policy expressly warns that three instances of tardiness and/or absenteeism within a 30-day period may result in disciplinary action. <u>Id.</u> at ¶ 8; Docket No. 13-5 at p. 9.

9. Hotel employees receive sick leave, vacation pay, and other customary fringe benefits. Pursuant to the Hotel's sick leave policy, employees are entitled to time off from work with pay in case of genuine sickness, injury or medical appointments that must be scheduled during work hours. Leave to attend medical appointments must be requested in advance to the employee's supervisor. In addition, the policy states that a doctor's certificate or other medical evidence may be required to return to work after the second day of absence. Docket No. 13-5 at p. 23.

10. Eligible employees may also request up to 12 weeks of unpaid leave within a 12-month period under the Family Medical Leave Act. Id. at p. 25.

11. The personnel policies outlined above are published in Wyndham's Employee Handbook (the "Handbook") and distributed to employees. Plaintiff, who received copy of the Handbook in 2007, is familiar with these policies. SUF at ¶¶ 10-11.

### Medical Conditions

12. During her employment at the Hotel, Plaintiff was diagnosed with fibromyalgia, carpal tunnel syndrome, hyperactive bladder, depression, anxiety and other conditions (arthritis in her arm and back). Id. at ¶¶ 15-20.

13. Due to her medical conditions, Plaintiff experiences chronic pain, which at times renders her unable to lift weight. Id. at ¶ 19; Docket No. 32-1 at ¶ 19. This often occurs when she forgets to take her medications or when their effect wears off. Docket No. 13-3 ("Exhibit A"), at pp. 28-29. Plaintiff has not submitted any medical documentation that establishes her limitations to lift, and she admits that she does not have a weight-limit restriction.

14. To alleviate the symptoms associated with fibromyalgia and arthritis, Plaintiff takes the following prescribed medications: Neurontin, Celebrex and Tramadol. SUF at ¶ 17-18. Plaintiff was also prescribed medications to treat her depression and anxiety. Id. at ¶ 21.

15. Due to her bladder condition, Plaintiff needs to use the bathroom frequently. Id. at ¶ 20.

16. Plaintiff's medical conditions do not impair her ability to perform the normal functions of her job or normal daily chores. In fact,

Plaintiff does not consider herself as a disabled person. <u>Id.</u> at ¶¶ 23-24.

### *Employment History and Work Performance*

17. Plaintiff often misses work due to her medical conditions. However, she acknowledges that Hotel management has accommodated her leave requests and adapted to her absenteeism. <u>Id.</u> at ¶ 25 and 27.

18. Most, if not all of Plaintiff's sick leave requests to attend medical appointments have been approved after her current supervisor, Helen Delgado ("Delgado"), began working at the Hotel.[1] Docket No. 13-3 at p. 25. She had to reschedule her appointments on a few occasions because they overlapped with her co-workers' scheduled leaves. After doing so, her requests were granted. <u>Id.</u>

19. Plaintiff admits that her leave requests surpass those of her peers. SUF at ¶ 68.

20. In July of 2013, Plaintiff had three recorded instances of unauthorized absences within a 30-day period: July 7, 10 and 28, 2013. <u>Id.</u> at ¶ 38. Also, on July, 29, 2013, Plaintiff called her supervisor fifteen minutes prior to her scheduled shift to inform that she would report late for work. <u>Id.</u>

21. On August 2, 2013, Delgado met with Plaintiff to discuss aforesaid deviations to the Hotel's attendance policy. <u>Id.</u> at ¶ 39.

### *First Meeting with Human Resources*

22. Also on August 2, 2013, after meeting with Delgado, Plaintiff met with HR Senior Manager Johanna Vargas ("Vargas") to complain about an alleged persecution and harassment on Delgado's part. She specifically protested about the following incidents:

    (a)   that she had received several phone calls from Delgado related to the PBX Department's operations (e.g., guest-related services or requests);

    (b)   the fact that Delgado asked Plaintiff about her medical condition when she requested Delgado's signature on a personnel action form in order to have the sick day payment processed;

    (c)   a telephone conversation in which Delgado told Plaintiff that her request for days off during a certain month was excessive;

    (d)   and that on January of 2013, she reported to work while sick after being told by Delgado that it was not good for her to be absent.[2] <u>Id.</u> at ¶ 41.

---

[1] Delgado began working at the Hotel in November of 2012, as Guest Services Manager and supervisor of all PBX Operators, including Plaintiff. SUF at ¶ 36.

[2] Plaintiff later clarified that Delgado never asked her to come to work.

23. Plaintiff also protested that after her tardiness incident on July 29, 2013, Delgado told her that her conduct was inconsiderate and "unprofessional," in addition to stating that "one more…."

24. Although Plaintiff did not ask Delgado what the "one more" comment meant, she is adamant that it was a threat intended to mean that one more absence or tardiness incident would result in her immediate discharge. Docket No. 32-1 at ¶¶ 40 and 47.

25. During the meeting, Vargas explained that under the Hotel's progressive discipline policy, corrective steps are usually taken prior to termination. SUF at ¶ 42.

26. Vargas also reminded Plaintiff the Hotel's attendance policy authorizes disciplinary measures against employees after three or more absences or tardiness incidents within a 30-day period. Id. Plaintiff then acknowledged that she had, in fact, incurred in the attendance deviations reported by Delgado. Id.

27. During the meeting, Plaintiff did not complain of discrimination or harassment because of her age, disability or any other protected classification. Id. at ¶ 43.

28. On that same date, Vargas prepared a memorandum summarizing the meeting, which Plaintiff deems accurate except for the omitted details regarding Delgado's "one more" comment. Id. at ¶ 44.

### *Coach and Counseling*

29. On August 5, 2013, Plaintiff received a disciplinary memorandum ("coach and counseling") from Delgado based on her attendance policy violations in July of 2013. This is the only disciplinary memorandum Plaintiff has received from Delgado. Id. at ¶ 45.

30. During her employment, Plaintiff has received written reprimands from former supervisors due to attendance policy violations. Id. at ¶ 46.

31. Plaintiff's peers have also received disciplinary memoranda from Delgado based on personnel policy violations, regardless of their age or disabilities. Id. at ¶ 55.

### *Second Meeting with Human Resources*

32. On August 7, 2013, Vargas met with Delgado and Plaintiff to discuss Plaintiff's internal complaint. Id. at ¶ 48.

33. Prior to this meeting, Delgado was unaware that Plaintiff was sick or receiving any medical treatment. Id. at ¶ 49.

34. Delgado clarified that her "one more..." comment meant that she would have to document Plaintiff's violations to the Hotel's personnel policies in the future. As for their telephone conversation on July 19, she denied calling Plaintiff "unprofessional" or stating that her conduct left "left much to say." According to Delgado, during that conversation she merely emphasized the importance of being responsible and committed towards the PBX Department. Id.

35. At no point during this meeting did Plaintiff mention any perceived discrimination, harassment - on the basis of her disability, age or any protected category - or retaliation by Delgado.[3] Id. at ¶ 51.

36. Vargas prepared a memorandum summarizing the meeting, which Plaintiff deems as a fair account of the same. Id. at ¶ 52.

37. Plaintiff acknowledges that HR took prompt action in addressing her complaint, but takes issue with Vargas' purported insistence that she misunderstood Delgado's "one more" comment. Id. at ¶ 53; Docket No. 32-2 ("Exhibit 1"), at pp. 80-81.

### *Request for Use of Lobby Bathroom*

38. Plaintiff is aware that the use of the Hotel's guest-designated bathrooms by Hotel personnel is prohibited. Id. at ¶ 15; see also Docket No. 13-3 at pp. 79-80, 205. In fact, the Handbook expressly warns that employees who make unauthorized use of guest facilities may be subject to immediate discharge. Docket No. 13-5 at p. 15.

39. In or around August of 2013, Plaintiff informed Delgado that she suffered from a bladder condition which required her to use the bathroom frequently. She also requested authorization to use the guest bathroom in the Hotel Lobby, as it is the closest one to her work area. In response, Delgado asked Plaintiff to provide the required medical certificate in order to process her request. SUF at ¶¶ 72-73.

40. Soon thereafter, Plaintiff provided a medical certificate from Dr. Alexis Pablos, addressed "to whom it may concern," indicating that Plaintiff "has a hyperactive bladder and cystocele. She needs to go to the bathroom frequently." Id. at ¶ 74. The certificate does not

---

[3] In adopting by reference her previous, albeit unrelated, response to Defendant's SUF at ¶ 43, Plaintiff failed to properly contest Defendant's SUF at ¶ 51. Thus, SUF at ¶ 51 is deemed uncontested.

order that Plaintiff be authorized to use the bathroom closest to her work area or that any particular accommodation be provided. Id. at ¶ 75.

41. Nonetheless, Plaintiff has been allowed to use and, indeed, uses the Lobby bathroom frequently. Id. at ¶ 76. Per Plaintiff's deposition testimony, all front desk and reservation area employees, including PBX Operators like herself, have used the Lobby bathroom for years. Id. at ¶ 77; Docket No. 13-3 at pp. 83-84.

### *2013 Performance Evaluation*

42. Plaintiff received a favorable end-of-the-year performance evaluation from Delgado, where she was ranked as a "Key Contributor." Id. at ¶ 58.

### *Other Workplace Incidents*

43. In August of 2014, Delgado verbally admonished Plaintiff for wearing flat sandals and sitting with her feet up during her shift. Id. at ¶ 59.

44. On that same day, Delgado called Plaintiff into her office and verbally admonished her for bringing a microwave oven to the PBX Department without previous authorization.[4] As Plaintiff was leaving the office, she heard Delgado yelled at her not to slam the door. Id. at ¶¶ 60-61; Docket No. 32-1 at ¶ 61.

45. Thereafter, Plaintiff met with HR Senior Manager Vargas to complain about an alleged harassment on Delgado's part. Her complaint was prompted by Delgado's verbal admonishments earlier that day. Id. at ¶ 63.

46. In September 2014, Vargas met with Plaintiff and explained the results of HR's investigation of her complaint against Delgado.[5] As part of that process, Vargas interviewed two other employees who witnessed Plaintiff's and Delgado's interaction. One of them did not notice anything wrong with the manner in which Plaintiff and Delgado communicated with each other, while the other believed that, if anything, Plaintiff was "too strong" when she talked to Delgado. Id.

---

[4] Plaintiff claims that Delgado did not ask her to remove the microwave, but instead said she would "take actions her way." Id. at ¶ 60. However, no formal reprimand was issued.

[5] This meeting occurred upon Plaintiff's return to work from vacation leave. Id.

at ¶ 64. Thus, Vargas reminded Plaintiff to be cautious in her interaction with others and suggested she avoid talking when upset. Id.

47. Vargas also discussed the Hotel's "standards of appearance" policy, which prohibits the use of sandals in the workplace. Nonetheless, Vargas explained that if Plaintiff needed to wear sandals or other type of shoes due to a medical condition, then she could request that accommodation by providing a medical certificate with the corresponding recommendation. Id.

48. Pursuant to the Hotel's Standards of Appearance, all employees must wear shoes that meet the specification of the employment position. The policy expressly bans the use of sandals, unless designated as a uniform specification. Docket No. 13-5 at p. 17.

49. During her deposition, Plaintiff admitted that Delgado never retaliated against her as a result of her internal complaints with HR or the discrimination charge filed with the EEOC. SUF at ¶ 71.

50. Plaintiff continues to work at the Hotel and, therefore, has not suffered an economic harm or loss.

### III.   DISCUSSION

In the instant case, Velez advances three different theories of disability discrimination under the ADA: failure to provide reasonable accommodation, disability-based harassment amounting to a hostile work environment, and retaliation. See Docket No. 1. Under each theory, a threshold showing of disability is required. See Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir.2016); Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir.2002).

#### A. American with Disabilities Act

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Where, as here, there is an absence of direct evidence, ADA plaintiffs may nonetheless rely on circumstantial evidence to establish a prima facie case of discrimination by using the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411

U.S. 792, 93 S.Ct. 1817 (1973)). Under this analysis, the plaintiff must show that she: (i) has a disability within the meaning of the ADA; (ii) is able to perform the essential functions of the job, with or without reasonable accommodation; (iii) was discharged or subjected to an adverse employment action based, in whole or in part, on her disability. See Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir.2008); Phelps v. Optima Health, Inc., 251 F.3d 21, 24-25 (1st Cir.2001).

If the plaintiff establishes a *prima facie* case, the burden of production will shift to the defendant to "articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir.2007)(quoting Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir.2005). If the defendant satisfies this burden, "the initial inference of discrimination evaporates,…, and the burden then shifts back to the plaintiff to proffer evidence to establish that [the defendant's] non-discriminatory justification is mere pretext, cloaking discriminatory animus." Id. (internal quotation and citation omitted). However, "[t]he ultimate burden of proving unlawful discrimination rests at all times with [the plaintiff]." Tobin, 433 F.3d at 105.

### 1. Actual Disability

The ADA defines disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such impairment. 42 U.S.C. § 12102(1). Here, Velez proceeds under an "impairment substantially limiting a major life activity" theory. See Docket No. 32 at page 2. Thus, the Court must conduct a three-part test consisting of the following inquiries: (1) if the plaintiff suffered from a physical or mental impairment;[6] (2) if the "life activity" limited by the impair the impairment qualifies as "major"; and (3) if the impairment, in fact, substantially limits the plaintiff's identified

---

[6] The Equal Employment Opportunity Commission ("EEOC") defines "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or any mental or physiological disorder, such as an intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities." See 29 C.F.R. § 1630.2(h).

major life activity. See Carroll, 294 F.3d at 238 (internal citations omitted). "The burden is on the plaintiff to establish these three elements." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20 (1st Cir.2004)(internal citations omitted); see Maldonado v. Cooperativa De Ahorro, 685 F.Supp.2d 264, 272 (D.P.R.2010).

Ordinarily, "[i]t is insufficient for individuals attempting to prove disability status … to merely submit evidence of a medical diagnosis of an impairment." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681 (2002), superseded by statute, ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008);[7] see Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir.2011)(noting that "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient"). Rather, an ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial." Id. (citation omitted). In making this determination, courts should "consider the nature and severity of the impairment, its expected duration, and its permanent or long-term impact." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 21 (1st Cir.2002)(citing 29 C.F.R. § 1630.2(j)(2)).

As previously noted, Velez claims she suffers from the following physical and mental impairments: carpal tunnel syndrome (CTS), fibromyalgia, a bladder condition, and depression. Docket No. 32 at p. 2.[8] Some of these impairments may constitute, at least in some instances, a disability under federal law. See e.g. Davila-Rivera v. Caribbean Refrescos, Inc., 150 Fed.App'x. 3, 6 (1st Cir.2005)(noting that CTS and depression have been recognized, in some circumstances, as physical and

---

[7] The ADA Amendments Act of 2008 ("ADAAA") changed the evaluation of ADA claims and the definition of the term "disability," so that the term "be construed in favor of broad coverage of individuals under [the ADA]." 42 U.S.C. § 12102(40(A). Pursuant to the current regulations of the EEOC implementing the ADA, term "substantially limits" no longer requires that an impairment "prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1110 (8th Cir.2016); see 29 C.F.R. § 1630.2(j)(1)(i). However, even under the less demanding standards introduced in the ADAAA, an individual's disability must still have a substantial limiting impact on a major life activity.

[8] Plaintiff only claims a substantial limitation of certain daily activities as a result of these impairments. Other alleged conditions, such as anxiety, are only mentioned in passing. Id. at pp. 2-3.

mental impairments, respectively); Calero-Cerezo, 355 F.3d at 21 (noting depression may constitute a mental impairment if it substantially limits a major life activity); Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138 (2d Cir.2002)(holding that an individual diagnosed with fibromyalgia and chronic fatigue syndrome was disabled for purposes of the ADA). Velez contends that her impairments substantially limit several daily life activities, including that of moving and lifting heavy objects. Docket No. 32 at pp. 2-3.

At the outset, Velez has produced no evidence whatsoever pertaining to any disability-related diagnoses or the effects of the claimed medical conditions on her daily functioning, particularly those limitations relevant to major life activities recognized under the ADA.[9] As for any claimed restriction on Plaintiff's ability to lift, it is undisputed as a matter of record that Velez does not have a weight-limit restriction. Finding of Fact at ¶ 13. And although she claims that she suffers from such debilitating pain that she cannot even "lift a pencil," Velez admits that this often occurs when she forgets to take her medications or when their effect wears off. Id. Plaintiff has also failed to evince any substantial limiting effect caused by her bladder condition, other than her need to use the bathroom frequently. Id. at ¶ 15. In cases like the instant one, where several of Plaintiff's alleged impairments feature symptoms that vary widely from person to person, an individualized assessment regarding the effect of the impairment becomes especially necessary. See Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 362-63 (D.P.R.2008)(so noting in light of the plaintiff's fibromyalgia and depression diagnoses)(citing cases).

At any rate, the First Circuit "has specifically addressed the issue of lifting limitations and held that limitations on lifting, without more, are not a substantial limitation on a major life activity." McDonough v. Donahoe, 673 F.3d 41, 48 (1st Cir.2012)(quoting Prescott v. Higgins, 538 F.3d 32, 44 (1st Cir.2008)); Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 22 (1st Cir.2002)("[I]f a restriction on heavy

---

[9] For ADA purposes, "major life activities" include functions such as walking, performing manual tasks, caring for oneself, working, sitting, standing, lifting, reaching, bending, thinking, concentrating, and communicating. See 42 U.S.C.A. § 12102(2)(A). In addition, the operation of a major bodily function, including bladder, is considered a major life activity under the statute. See 42 U.S.C.A. § 12102(B).

lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the elderly, the weak, and the out-of-shape.")). Similarly, a number of courts have held that the inability to walk, stand, or sit continuously for more than one to two hours does not constitute a handicap. See e.g., McDonough, 673 F.3d at 48 (collecting cases)(inability to stand for more than one or two hours is not a disability). Ultimately, that a particular condition qualifies as an "impairment" will not suffice.

Withal, after an independent review of the record, we still find that it falls short of showing, even when viewed favorably, that Plaintiff's alleged conditions substantially impair any major life functions, including that of moving, lifting or other "normal daily chores." See Finding of Fact at ¶ 16. The fact remains that Plaintiff does not even consider herself as disabled. Id. Having failed to evince how, in terms of her own experience, she was substantially limited in any major life activity, the Court is forced to conclude that Velez does not have an actual disability within the meaning of the ADA.

Insofar as Plaintiff cannot make out a claim under the actual disability prong of the statutory definition of disability, the Court finds that she is not a qualified individual with a disability under the ADA. Consequently, Plaintiff's claims of disability-based discrimination and harassment under the ADA, which she brings under a hostile work environment theory, necessarily fail.[10] The Court therefore **GRANTS** Defendant's motion for summary judgment with respect to these claims.

### 2. Reasonable Accommodation

Velez also claims that Defendant violated the ADA by refusing to grant her requests for reasonable accommodations. Docket No. 1 at ¶¶ 18-19 and 34. The Court will discuss Plaintiff's failure-to-accommodate claim even though its previous finding that Velez is not a "qualified individual" under the ADA is dispositive of said cause of action.

Under the ADA, the term "discriminate" includes "...not making reasonable accommodations to the known physical or mental limitations of

---

[10] Even if we assume that Plaintiff could establish that she is a qualified individual with a disability within the meaning of ADA, for the reasons discussed below, Velez has failed to demonstrate that the allegedly adverse employment actions complained of rise to the level of severity or pervasiveness required to make out a hostile or abusive work environment claim under ADA. See section 3, *infra*.

an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C.A. § 12112(b)(5)(A); see Murray v. Warren Pumps, LLC, 821 F.3d 77, 84 (1st Cir.2016)(noting that obligation is on the employer to provide reasonable accommodation where a protected employee has requested one or the employer otherwise knew that an accommodation was needed). Reasonable accommodations are modifications or adjustments to the work environment, or to the manner or circumstances under which the functions of a position are customarily performed, that enable a qualified individual with a disability to perform a position's essential functions. See 29 C.F.R. § 1630.2(o).

To survive summary judgment on her reasonable accommodation claim, Velez must demonstrate that "'(1) [sh]e is disabled within the meaning of the ADA, (2) [she] was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the Hotel], despite knowing of [Velez]' disability, did not reasonably accommodate it.'" E.E.O.C. v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 131 (1st Cir.2014)(quoting Freadman, 484 F.3d at 102)). Assuming, purely for argument's sake, that Plaintiff could establish the first two elements, we find that she has failed to make a showing sufficient to establish the third element, that is, that Defendant knew of her disability yet failed to accommodate her.

### *Sick Leave Requests*

Velez claims that the Hotel failed to reasonably accommodate her medical leaves in order to attend medical appointments and "receive treatment for her different conditions." Docket No. 32 at p. 5. Plaintiff argues that her supervisor threatened her with termination from employment due to her absences, including the one on July 29, 2013, which were related to her different medical conditions...."[11] Id. at p. 8. In essence, Velez asks us to conclude that her present justification of past performance issues, namely, unauthorized absences from work constitutes a request for reasonable accommodation.

---

[11] In her opposition, Velez only mentions her absence on July 29, 2013. Nonetheless, the record shows that Velez had three unauthorized absences and one tardiness incident in July of 2013, all in violation to Defendant's attendance policy.

Generally, to trigger the employer's obligation to provide any type of accommodation under the ADA, the plaintiff's "request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir.2012)(citing Freadman, 484 F.3d at 102); see also Kiman v. New Hampshire Dept. of Corrections, 451 F.3d 274, 283 (1st Cir.2006)(actual request needed to trigger a reasonable accommodation duty). Several decisions issued by the First Circuit also evince the principle that the employer's obligation applies prospectively, i.e., after the employer is put on notice of the need for an accommodation and the relationship between the accommodation and the employee's alleged disability. See e.g. Jones, 696 F.3d at 89-90 (noting that **"[w]hen an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such request can be 'too little, too late.'"**)(emphasis added)[12](quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 262 n.9 (1st Cir.2001), and citing, inter alia, Rose v. Laskey, 110 Fed.Appx. 136, 138 (1st Cir.2004)(per curiam)(finding that employee's presentation of therapist's letter requesting leave of absence after employee threatened supervisor with violence was "untimely" as well as unreasonable)).

A leave of absence can be considered a reasonable accommodation based on the particular facts and circumstances of each case. See Henry v. United Bank, 686 F.3d 50, 61 (1st Cir.2012)(citing cases). In this case, however, it is uncontested that Velez first raised her medical conditions as an explanation for her attendance policy violations *after* receiving a disciplinary memorandum ("coach and counseling") on August 2, 2013. The record lacks any evidence that Velez notified Defendant of her

---

[12] In Jones, 696 F.3d at 89-90, the First Circuit affirmed the entry of summary judgment against the plaintiff. With respect to plaintiff's failure-to-accommodate claim, the court held that while direct and specific in its request for an extension of time, the plaintiff's purported request for an accommodation was neither reasonable nor "timely" since it was made after the plaintiff learned that his employment was being terminated based on his failure to perform an essential function of his job. Id.; see also Rios-Jimenez, 520 F.3d at 42 (holding that employee who frequently missed work was not a qualified individual able to perform the essential functions of her job, either with or without reasonable accommodation); Castro Medina, 565 F. Supp. 2d at 369-371 (holding that employee's gross attendance problems, even if tied to her illness, as well as her failure to request additional medical leave, demonstrated that she was not a qualified individual under the ADA)(citing cases).

claimed disabilities before that time, or that as a result thereof she would need to take periodic or unexpected leave, separate from or beyond the limit established by the relevant personnel policies. See Findings of Fact at ¶¶ 6-10. There is also no evidence that when Velez met with HR and her supervisor in August, or at any time after that, she indicated or specified that her absences and tardiness were connected to any specific condition. Moreover, based on the record before us, no reasonable jury could conclude that Velez prospectively and sufficiently asked for such an accommodation from Defendant when faced with the alleged employment termination threats from Delgado due her attendance and punctuality issues.

At any rate, even if Velez could show that she adequately requested that accommodation, or that her employer otherwise knew it was needed, the undisputed material facts before the Court demonstrate that all of Velez' sick leave requests were granted during the relevant time period. Id. at ¶ 18. In other words, there is no indication that medical leave was requested and denied.[13] In fact, Velez acknowledges that Defendant has accommodated her leave requests and adapted to the fact that she often misses work. Finding of Fact at ¶ 17. Moving forward, Plaintiff has not proposed any special accommodation to support her claim. Her desired recourse, it seems, is to receive absolute immunity shielding her from all disciplinary measures based on workplace misconduct that may, or may not be related to a potentially qualifying disability under the ADA.

### ***Request to use the Hotel Lobby bathroom***

Plaintiff next claims that Defendant failed to accommodate her request to use the Lobby bathroom as a result of her bladder condition. Docket No. 32 at p. 5. This claim is substantiated with a medical note from Velez' doctor addressed to "whom it may concern," which indicates that the employee indeed suffers from a hyperactive bladder and needs to use the bathroom frequently. Findings of Fact at ¶¶ 15 and 40. The note does not recommend that Velez be authorized to use the Lobby bathroom, or that any other particular accommodation be provided as a result her bladder condition. Id. at ¶ 40. Velez admits that she never requested any particular accommodation, other than presenting the medical certificate.

---

[13] Even on the few unspecified occasions in which Plaintiff had to reschedule her medical appointments, her leave requests were eventually granted.

Assuming, without deciding, that the certificate contained sufficiently direct and specific language to trigger a responsibility on the part of Defendant to enter into an interactive process to determine an appropriate accommodation, see Calero-Cerezo, 355 F.3d at 23, Plaintiff still has to show that Defendant did not offer a reasonable accommodation for the disability. And it is uncontested that Velez was, in fact, allowed to use the Lobby bathroom. Finding of Fact at ¶ 41. Furthermore, there is evidence showing that Hotel employees who work at the front desk area, like Velez, have been using the Lobby bathroom for years. Id.

Velez attempts to create factual issues by asserting that even after submitting the medical certificate in August of 2013, she was required to obtain authorization from Delgado prior to using the Lobby bathroom. Docket no. 32 at pp. 6-7. Even reading this assertion in the light most favorable to Plaintiff, there is still no evidence from which a reasonable jury could conclude that Velez was denied the ability to use the bathroom or that she sought any further accommodation that the Hotel rejected. Thus, the Court concludes that Defendant reasonably accommodated Velez' request. Plaintiff is reminded that "[r]easonable accommodation does not require an employer to provide literally everything the disabled employee requests." Litovich v. Somascan, Inc., Civil No. 07-1397 (DRD)(D.P.R. Dec. 17, 2008), 2008 WL 5972761, at *8 (quoting Schmidt v. Methodist Hospital of Indiana, Inc., 89 F.3d 342, 344 (7th Cir.1996)).

In light of the foregoing, the Court concludes that even if Plaintiff could meet the threshold issue of disability, she has failed to show that she is a qualified individual who could effectively undertake the essential functions of her job with or without reasonable accommodation, or that Defendant failed to reasonably accommodate her requests. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's failure-to-accommodate claims under the ADA.

### 3. Retaliation

Velez also brings forth a retaliation cause of action under the ADA, alleging that she engaged in protected activity, namely, complaining about her supervisor, and as a result, she was retaliated against. See Docket No. 1. The alleged retaliatory actions included threats of

termination, intimidation, and other harassing and discriminatory comments.

"An ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability claim." Freadman, 484 F.3d at 106 (internal citations omitted). The ADA's retaliation provision makes it unlawful to retaliate against an individual because she opposes an act made unlawful by the ADA. See Collazo-Rosado v. Univ. of Puerto Rico, 765 F.3d 86, 92 (1st Cir.2014)(citing 42 U.S.C. § 12203(a)). In the absence of direct evidence, the Court applies the familiar burden-shifting analysis. See id.; Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir.2013). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in protected conduct, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. See Calero-Cerezo, 355 F.3d at 25.

The record shows that Velez engaged in protected activity, including complaining on two occasions to HR about allegedly harassing conduct on the part of her supervisor, and filing an administrative claim with the EEOC. See Findings of Fact at ¶¶ 22, 32 and 49. Accordingly, she meets the first prong of the test. See Castro-Medina, 565 F. Supp. 2d at 379-380 (noting that protected conduct includes not only the filing of administrative complaints, but also internal complaints with the plaintiff's employer)(citations omitted). We thus move on to examine the second prong of the analysis.

**Adverse Employment Actions**

The First Circuit has explained that "[t]o be adverse, an action must materially change the conditions of plaintiff's employ." Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir.2002)(citation omitted). Typically, such actions "involve[] discrete changes … ,such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir.2012)(quoting Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir.2010). Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard. See Blackie v. Maine, 75 F.3d 716, 725-726 (1st Cir.1996).

As to this prong, Plaintiff points to Delgado's threats of termination, including the "one more" comment made after Velez' unauthorized absence on July 29, 2013. See Docket No. 32 at p. 12. She also contends that Vargas' insistence that she [Plaintiff] had misunderstood Delgado's "one more" comment made her feel "intimidated and believe[] that it was better to shut up and not continue complaining…" Id. The allegedly adverse, dissuading effect Vargas' actions had on Plaintiff's employment is ultimately and conclusively contradicted by the uncontested evidence on record which shows that after her first internal complaint on August 2, 2013, Velez not only met with Vargas and Delgado to discuss her concerns, but also brought a second internal complaint against her supervisor in August of 2014. Finding of Fact at ¶ 45.

Next, Plaintiff avers that Delgado's verbal admonishments in August of 2014, which she places under the "microwave incident" category, constitute actionable retaliatory actions. See Findings of Fact at ¶¶ 43-44. Nonetheless, the challenged employment decision did not culminate or bring about any materially adverse consequences.[14] And "a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws." Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46-47 (1st Cir.2003). Also, the coach and counseling received by Plaintiff based on her attendance policy violations hardly rises to the level of the material, discriminatory change required for a prima facie showing. Case law acknowledges that reprimands without any tangible consequences do not rise to the level of an adverse employment action. See Bhatti v. Trustees of Boston University, 659 F.3d 64, 73 (1st Cir.2011)(holding that written reprimands that do not carry with them any tangible consequences were not materially adverse and thus not actionable); Serrano v. Donahoe, Civil No. 12-1055 (PAD)(D.P.R. Sept. 30, 2014), 2014 WL 4924434, at *8 (same)(citation omitted).

It is undisputed as a matter of record that Velez has continuously worked at the Hotel since November of 1996, in the same PBX Operator position; she has not been terminated, demoted, transferred or evaluated negatively as a result of the events alleged in her complaint. Plaintiff

---

[14] Plaintiff appears to have forgotten that her favorable end-of-the-year performance evaluation, where she was ranked as a key contributor, came from none other than Delgado. Finding of Fact at ¶ 42.

also admits that she has not suffered any economic harm or loss as a result of thereof. Finding of Fact at ¶ 50. Absent a probative evidentiary proffer sufficient to show that Velez has suffered a taking of something of consequence by Defendant, her retaliation claim fails at the *prima facie* stage. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's retaliation cause of action.

### B. Age Discrimination in Employment Act

In her complaint, Velez asserts a discrimination claim under the ADEA, which makes it unlawful for an employer to "fail or refuse to hire or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir.2009)(quoting 29 U.S.C. § 623(a)(1)). Defendant argues that dismissal is appropriate insofar as Velez failed to put forth any evidence in support of this claim. See Docket No. 34 at p. 3. We agree.

After a careful review of Plaintiff's opposition (Docket No. 32), the Court finds that Plaintiff simply failed to set forth any evidence of age discrimination on the part of her employer, or even adequately develop an argument in support of her claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Glob. NAPs, Inc. v. Verizon New England, Inc., 706 F.3d 8, 16 (1st Cir.2013)(citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). The Court will not do counsel's work. "[M]ore than speculation … is required to save her from summary judgment." Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 461 (1st Cir.2016)(citing Cahoon v. Shelton, 647 F.3d 18, 27 n. 6 (1st Cir.2011); Medina-Muñoz, 896 F.2d at 8).

In accordance with the foregoing, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's ADEA claims.

### C. Supplemental Puerto Rico Law Claims

The remainder of Plaintiff's claims are grounded on Puerto Rico law. Defendant has requested the dismissal of these claims. See Docket No. 14 at p. 24. Since the federal claims under the ADA and the ADEA have been dismissed and no other grounds for jurisdiction exist, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining

Puerto Rico law claims. See <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)(explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(stating "if the federal claims are dismissed before trial,...the state law claims should be dismissed as well."). Accordingly, Plaintiff's claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE**.

### IV.    CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendant's motion for summary judgment (Docket No. 13). Accordingly, Plaintiff's claims for discrimination, harassment and retaliation under the ADA and the ADEA are hereby **DISMISSED WITH PREJUDICE**. The Plaintiff's claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 9, 2016.

<u>S/ JUAN M. PÉREZ-GIMÉNEZ</u>
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**